**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Glen Dunmire, ) | No. CIV-05-0101-PCT-MHM |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Commissioner of Social Security ) Administration, ) | |
| Defendant. ) | |

Plaintiff Glen Dunmire seeks judicial review of the Administrative Law Judge's ("ALJ") decision denying his claim for disability insurance benefits. 42 U.S.C. § 405(g).

**I.**

**Procedural History**

Plaintiff applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382, and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423, alleging disability since January 1, 2000 due to hand impairments. Plaintiff's application was denied initially and on reconsideration. Plaintiff requested a hearing and a hearing was held on September 4, 2003. On December 22, 2003, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Act. Plaintiff sought review of the ALJ's decision. The Appeals Council did not grant Plaintiff's request for review and the decision became final.

1  Plaintiff commenced an action for review in this Court pursuant to 42 U.S.C. §§ 405(g) and
2  1383(c).

3  Plaintiff timely filed a complaint for judicial review in this Court. (Doc.1). Defendant
4  has filed an answer and a certified copy of the transcript of record. (Doc. 10). Plaintiff has
5  filed a motion for summary judgment (Doc. 13) supported by a statement of facts (Doc. 14)
6  and memorandum of points and authorities. (Doc. 15). Defendant has filed a cross-motion
7  for summary judgment (Doc. 17) supported by a statement of facts (Doc. 18) and
8  memorandum of points and authorities. (Doc. 19). Plaintiff has filed a response to
9  Defendant's motion for summary judgment and a reply. (Doc. 20).

## II.

### Standard of Review

12  This Court must affirm the ALJ's findings if they are supported by substantial
13  evidence and free from reversible legal error. Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir.
14  1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence
15  as a reasonable mind might accept as adequate to support a conclusion." Richardson v.
16  Perales, 402 U.S. 389, 401 (1971); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

17  In determining whether substantial evidence supports a decision, the Court considers
18  the record as a whole. Richardson, 402 U.S. at 401; Tylitzki v. Shalala, 999 F.2d 1411, 1413
19  (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court
20  cannot substitute its own determination. Young v. Sullivan, 911 F.2d 180, 184 (9th Cir.
21  1990). Where evidence is inconclusive, "questions of credibility and resolution of conflicts
22  in the testimony are functions solely of the [Commissioner]." Sample v. Schweiker, 694 F.2d
23  639, 642 (9th Cir. 1982). Therefore, if on the whole record before the Court, substantial
24  evidence supports the Commissioner's decisions, this Court must affirm. Hammock v.
25  Bowen, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C. § 405(g).

26  An ALJ determines an applicant's eligibility for disability benefits through the
27  following five stages:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a "medically severe impairment or combination of impairments";

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and work experience."

Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)). See 20 C.F.R. § 416.920. At the fifth stage, the burden of proof shifts to the Commissioner. Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

## III.

## Background Facts

Plaintiff was born on August 26, 1966 and was 37 years of age at the time of the administrative hearing. Plaintiff has eight years of education and his past relevant work includes heavy equipment operator. Plaintiff alleges that he became disabled on January 1, 2000 because of hand impairments. Plaintiff's disability insured status ran through December 31, 2002.

In September 2001, twenty months after his alleged disability date, Plaintiff sought medical attention for neck pain. Plaintiff "was pulling concrete when he felt something jerk in his neck." Examination revealed tenderness over Plaintiff's trapezius, but neurologic examination was normal.

In January and February 2002, Plaintiff received medical treatment for an infected left thumb. Plaintiff listed himself as "unemployed" but stated he did have some odd jobs that he was working, including rebuilding a jeep, and doing some concrete work. On February 1, 2002, Plaintiff reported to Michael Horn, M.D., that he last "used intraveneous

- 3 -

1 methamphetamine approximately one month ago." On the same date, Plaintiff told Joseph
2 Colorafi, M.D., that he used "IV METH just yesterday." As of February 22, 2002, Plaintiff's
3 left thumb appeared to be "almost healed with no evidence of infection."

4       In May 2002, Plaintiff underwent a mental status evaluation for the purposes of
5 substance abuse treatment at the Verde Valley Guidance Clinic, Inc. Plaintiff was evaluated
6 for language ability and comprehension, developmental history, and mental status evaluation.
7 This evaluation revealed no evidence of mental retardation. Plaintiff's mental impairments
8 were diagnosed as amphetamine dependence and alcohol abuse. Plaintiff's global assessment
9 of functioning ("GAF") was estimated to be 65. In the intake report, Plaintiff's activities
10 were listed as including exercise, travel, fishing, hiking, gardening, swimming and dancing.
11 It further was shown that Plaintiff had no difficulty speaking or understanding English.
12 There was, however, some indication that Plaintiff had some difficulty with reading.

13       On June 25, 2002, Plaintiff sought medical attention for back pain of three or four
14 days duration. At the time of the onset of back pain or shortly thereafter, Plaintiff was
15 carrying another patient in the drug rehabilitation program. Plaintiff's back impairment was
16 diagnosed as muscle strain. Motrin, ice and heat were prescribed.

17       In August 2002, Plaintiff was examined by Robert D. Barker, II, M.D. Plaintiff
18 reported he had "quit working about a week ago, was doing some kind of job with the Job
19 Corps but decided to quit." Plaintiff was not on any medication. A physical examination of
20 Plaintiff's arms and shoulders revealed that he had some stiffness of the DIP joint of his left
21 thumb but was otherwise normal. Plaintiff demonstrated good finger strength and good
22 pinching strength with both hands. Dr. Barker estimated that Plaintiff could "easily lift 50
23 to 100 pounds occasionally and 25 to 50 pounds frequently." A clinic note indicated that
24 Plaintiff had stopped using "meth" 18 months before.

25       On May 30, 2003, Plaintiff reported pain in his left third digit. The pain was
26 diagnosed as the result of cellulitis. Two days later, the finger appeared "ok."

27 The Hearing Testimony.

28

1    At the beginning of the hearing, the ALJ stated that on August 14, 2003, Plaintiff had
2 filed a request for evaluation of a mental impairment. The ALJ deferred Plaintiff's request
3 for evaluation of mental impairment until the conclusion of testimony.

4    Plaintiff testified that he could not work because of hand pain. Plaintiff said he had
5 not seen a doctor recently for his hand pain because he did not like his doctor. Plaintiff
6 stated that his doctor had prescribed pain pills for his hands but Plaintiff did not like taking
7 the pills. Plaintiff testified that he had worked since January 2000 "every now and then" for
8 two to three days at a time and then would have to stop. Plaintiff said he had not used alcohol
9 or chemical substances for some fourteen or fifteen months. Plaintiff reported that he was
10 nervous, had concentration problems, and had feelings of guilt or worthlessness.

11    Plaintiff testified that he had difficulty reading and writing. Plaintiff stated that he
12 cannot pay his own bills or complete paperwork. Plaintiff can sign his own name. Plaintiff
13 stated that he attended special education classes and that he went through the eighth grade
14 three times. Plaintiff dropped out of school. Plaintiff stated that he could not read a
15 newspaper article and understand it. Plaintiff lives with his fiancee and has two children,
16 ages 6 and 8.

17    Plaintiff testified that he had suffered nerve and ligament damage to his right wrist
18 in 1994 in a motorcycle accident resulting in loss of major function to his right hand due to
19 numbness, pain and cramping. Plaintiff, who is left-handed, claimed that he put his left hand
20 through a window in 1997, resulting in nerve damage and a severe staph infection. Plaintiff
21 stated that he could not hold anything with his left hand.

22    Plaintiff said he could do some housework, such as wash dishes, vacuum for a few
23 minutes, and take out the trash. Plaintiff testified that he no longer had a driver's license and
24 had been charged with DUI in 1997.

25    Plaintiff's fiancee, Lori Clark, who had known Plaintiff for one year, testified that she
26 was receiving disability benefits for schizophrenia and a learning disability and that her IQ
27 was 75. Ms. Clark stated that she knew that Plaintiff's IQ was lower than hers because she
28 can read better than Plaintiff. Ms. Clark testified that she does the cooking because Plaintiff

1   drops things easily, and that Plaintiff cannot spell or remember numbers or dates. Plaintiff
2   also cannot do math.
3       At the conclusion of the hearing, the ALJ denied Plaintiff's request for a mental
4   evaluation. The ALJ stated that he had not heard any compelling evidence that would
5   warrant such an examination. The ALJ asked Plaintiff why he had not gone back to the
6   Verde Valley Guidance Clinic. Plaintiff answered that he was afraid.
7       The ALJ left the hearing record open so Plaintiff's counsel could submit additional
8   medical records. The ALJ appears to have obtained medical records pertaining to Plaintiff's
9   treatment for back pain in June 2002 and for his left middle finger swelling in June 2003.
10  Plaintiff reported occasional alcohol use and working "in housekeeping at Infinia nursing
11  home." The ALJ sought these records at the request of Plaintiff's counsel. The ALJ stated
12  that he would not subpoena the records but that the state agency would contact the medical
13  sources in the ordinary course of business.
14      The ALJ asked the Vocational Expert ("VE") to assume that there was no work
15  history for Plaintiff for purposes of any hypothetical questions. This was because Plaintiff
16  had testified to prior work performed intermittently and on a short-term basis.
17      The following hypothetical question was posed to the VE regarding work that could
18  be performed: Assuming a 36-year old male, with no work history, educational background
19  to the eighth grade, who can frequently lift about 25 pounds, occasionally lift about 50
20  pounds, stand and/or walk about six hours in an eight-hour day, sit about six hours in an
21  eight-hour day, and unlimited with regard to pushing and pulling of foot and hand controls,
22  but who cannot flex well at the joint of the left thumb, with no limitations with regard to
23  reaching, handling, fingering, feeling, and assuming this person is illiterate. The VE
24  answered that work as a car wash attendant would be appropriate at the light level, with 3200
25  such jobs statewide and in excess of 240,000 nationally. Also, laundry worker, both unskilled
26  and skilled, and janitorial work.
27      Plaintiff's counsel added limited bilateral tasks, meaning one hour, to the hypothetical
28  question. The VE answered that the jobs would be eliminated.

## The ALJ's Conclusions.

The ALJ initially noted that Plaintiff was 33 years of age at the onset date and was 37 years of age as of the date of the hearing. Plaintiff's past work experience included construction laborer and front end loader operator. Plaintiff alleged that he had become disabled on January 1, 2000, because his right hand was severely broken, his left hand had a severe staph infection, and his fingers were numb. Records did not indicate that Plaintiff had engaged in substantial gainful activity after his alleged onset date.

The medical evidence indicated that Plaintiff has left thumb and finger pain - cellulitis; status post osteomyelitis; and periodic head pain, and numbness; which are severe impairments under the regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. No treating or examining physician had mentioned findings that met or were equivalent in severity to the criteria of any listed impairment. The ALJ specifically noted that "[w]ith regard to his substance addiction disorder, [Plaintiff] has no medically determinable psychiatric impairment as a result of it."

The ALJ summarized the medical evidence related to Plaintiff's physical impairments and noted that Plaintiff had been hospitalized from September 23-24, 2001, as a result of an injury he received while pulling concrete. Medical examination, including X-rays, revealed no indication of any significant limitation because of this incident. On February 1, 2002, Jack B. Quigley, M.D., reported that Plaintiff had an infection of the left thumb which had been treated multiple times in the preceding several weeks at the Flagstaff Medical Center. As of February 22, 2002, it appeared that Plaintiff's left thumb had almost healed, with no evidence of infection.

Robert D. Barker, M.D., a consultative examining physician, examined Plaintiff on August 22, 2002. X-rays of the left hand showed irregularity of the ulnar aspect of both phalanges, presumably related to healing after osteomyelitis. Dr. Barker opined that Plaintiff could lift 50 to 100 pounds occasionally and 25 to 50 pounds frequently, he could be on his feet six hours of an eight-hour day, and he could sit for six hours in an eight-hour day.

1 Plaintiff could also frequently climb, balance, stoop, kneel, crouch or crawl. He also could
2 easily grasp or catch objects, shift gears, flex his wrists constantly with both hands, and turn
3 faucets and knobs constantly with both hands. Plaintiff's hand strength was superior.
4 Plaintiff also could pick up coins, undo buttons or button his clothes with both hands. Dr.
5 Barker noted that Plaintiff could use public transportation, go shopping and do banking, and
6 he could use his upper extremities to prepare meals, feed himself, perform personal hygiene,
7 and handle paperwork and filing work easily above and below the waist level or overhead.

8       On June 25, 2002, Plaintiff was treated at the Yavapai Regional Medical Center
9 emergency room because of back pain. There was no indication that Plaintiff had significant
10 ongoing limitations in his ability to function as a result of this. On September 18, 2002,
11 Plaintiff was treated by Charles Welley, M.D., because of pain and swelling in the right hand.
12 It appeared that Plaintiff had a staph infection in his left thumb for nine months. While Dr.
13 Welley stated that Plaintiff could not hold a job because of problems with both hands, no
14 specific examination findings were reported to support this statement.

15       The ALJ noted that regarding the mental impairment, the records of Verde Valley
16 Guidance Clinic showed that when Plaintiff was evaluated on May 31, 2002, the only
17 diagnoses were amphetamine dependence and alcohol abuse. Despite these diagnoses,
18 Plaintiff's global assessment of functioning (GAF) was 65, indicating only mild symptoms
19 and generally functioning pretty well.

20       The ALJ found that the medical evidence did not establish ongoing physical or mental
21 limitations in the Plaintiff's ability to function that had lasted for a continuous period of 12
22 consecutive months. As for the mental limitation, the ALJ noted that Plaintiff's GAF was 65
23 indicating only mild symptoms and that the medical evidence did not establish a severe
24 psychiatric impairment.

25       The ALJ rejected Plaintiff's allegations of the degree of his impairments and
26 limitations as not credible based on the following reasons. Plaintiff had not submitted any
27 medical evidence dating back to the date of disability of January 1, 2000. Plaintiff had
28 reported injury when "pulling concrete" which is not activity usually done by a person too

1  disabled to perform substantial gainful activity. On February 1, 2002, Dr. Quigley reported
2  that Plaintiff had been injecting himself using methamphetamines and admitted to not taking
3  care of his thumb or following through with antibiotic care. The Valley Verde Guidance
4  Clinic records in May 2002 showed that Plaintiff was able to perform his activities of daily
5  living. Plaintiff could take care of himself and do his daily chores. Plaintiff had reported to
6  Dr. Welley on November 11, 2002, that he had quit using methamphetamines eighteen
7  months earlier but on February 2002, hospital records showed that Plaintiff was using
8  methamphetamines at that time. Despite substance abuse, Plaintiff had functioned well for
9  years with no mental illness reported. The ALJ stated that he had considered Ms. Clark's
10 testimony but that the medical evidence failed to support a finding that Plaintiff had an
11 impairment that was disabling.

12 The ALJ determined that Plaintiff retained the residual functional capacity for a full
13 range of medium work, and that he was capable of performing his past relevant work as a
14 front end loader operator. The ALJ reported a finding of "not disabled."

### IV.

### **Discussion**

17 Plaintiff has raised the following grounds of error in this appeal. Plaintiff contends
18 that the ALJ failed to develop the record concerning Plaintiff's mental limitations by not
19 ordering a consultative mental evaluation; failed to evaluate Plaintiff's mental limitations in
20 the decision; and, failed to ask the VE how Plaintiff's mental limitations would affect his
21 employment. As part of his argument, Plaintiff also contends that the ALJ failed to obtain
22 relevant medical records and erred in his evaluation of Plaintiff's credibility.

23 The burden is on the Plaintiff to establish that he has a severe mental impairment.
24 Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). The hearing before the ALJ is not an
25 adversary proceeding, however, and the ALJ in a social security case has an independent
26 duty to fully and fairly develop the record in order to enable an informed decision on the
27 claimant's request for benefits. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).
28 The duty exists even where the claimant is represented by counsel. Brown v. Heckler, 713

1  F.2d 441, 443 (9th Cir. 1983). Even if the claimant's symptoms "fail to meet or equal those
2  of a listed mental disorder, the ALJ must consider the effect of [a claimant's] mental state on
3  [his] ability to perform gainful activity." Sprague v. Bowen, 812 F.2d 1226, 1231 (9th Cir.
4  1987). Moreover, the duty to develop the record is such that the ALJ may not decide an issue
5  against the claimant based on the absence of evidence in the record. See Armstrong v.
6  Commissioner of Social Security, 160 F.3d 587, 589-90 (9th Cir. 1998).

7  In this case, the evidence suggests that Plaintiff has a history of drug or substance
8  abuse. His work history is intermittent and of short time periods. He is of limited
9  educational background and he attended special education classes. The record indicates that
10 Plaintiff has some difficulty reading. In contrast, Dr. Barker opined that Plaintiff could use
11 public transportation, go shopping and do banking,

12 Plaintiff sought treatment at the Verde Valley Guidance Center for drug abuse but did
13 not return to that facility. The record contains some discussion that Plaintiff's GAF was 65
14 but the significance of this information has not been clearly developed in the record. In
15 Grubb v. Barnhart, 2006 WL 288402 (D. W.Va. 2006), the district court included the
16 following discussion relevant to the GAF scale:

> The GAF scale ranges from zero to 100 and '[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness.' Diagnostic And Statistical Manual of Mental Disorders Fourth Edition, ("DSM-IV"), 32 (American Psychiatric Association (1994). A GAF of 61-70 indicates '[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ..., but generally functioning pretty well, has some meaningful interpersonal relationships.' DSM-IV at 32.

Id., at n. 10.

23 Based on the present record, it is unclear whether Plaintiff's GAF of 65 is indicative
24 of some mild symptoms of mental impairment. The parties have not provided any discussion
25 in their briefs regarding the issue. The ALJ's findings referenced Plaintiff's GAF of 65 as
26 indicative of no severe mental limitation but did not further explain this finding other than
27 to note that there was no medical evidence that established a severe psychiatric impairment.

Because the issue is unclear, the record appears to be devoid of evidence to support a finding either for or against the claimant on a determinative issue, that is, mental impairment. Where that is the case, further development of the record via consultation with a medical expert is appropriate. Armstrong, 160 F.3d at 589. A consultative examination is normally required where the evidence in the record is "not sufficient to support a decision." 20 C.F.R. §§ 404.1519a, 404.1512(f). A consultative examination of Plaintiff regarding mental impairment is appropriate in this case.

The Court further notes that Dr. Welley, one of Plaintiff's treating physicians, indicated that Plaintiff could not hold a job because of problems with both hands. On remand, the ALJ should contact Dr. Welley for additional information and clarification regarding this assessment. 20 C.F.R. § 404.1512(e)(1)("[w]e will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). The ALJ further should obtain any additional medical records from medical sources identified by Plaintiff. The ALJ also should consider Plaintiff's impairments in combination as appropriate. 20 C.F.R. § 404.1523 (consideration of combined effect of all impairments without regard to whether any such impairment considered separately would be sufficiently severe).

The Court concludes that this case should be remanded to the Commissioner for further proceedings consistent with this Order. See Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995)(in evaluating the necessity for a remand, the court is guided by "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice'.")(quoting Ware v. Schweiker, 651 F.2d 408, 413 (5th Cir. 1981)). The Court has not further considered Plaintiff's other grounds of error in light of the need for further development of the record in this case.

**Accordingly**,

**IT IS ORDERED** that Plaintiff's motion for summary judgment (Doc. 13) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment is granted to the extent that Plaintiff seeks remand of this matter for further proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment is denied to the extent that he seeks reversal of the Commissioner's decision and payment of benefits.

**IT IS FURTHER ORDERED** that Defendant's cross motion for summary judgment (Doc. 17) is denied.

**IT IS FURTHER ORDERED** that this case is remanded for further proceedings consistent with this Order.

DATED this 27th day of March, 2006.

_____
Mary H. Murguia
United States District Judge